UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MR. BRANDON GRIFFITH,

               Plaintiff,

-against-

CLARKSTOWN POLICE DEPT., et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

20-CV-06505 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Brandon Griffith ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, initiated this action in August 2020. (Doc. 1; Doc. 2, "Compl.").[1] This Court, after reviewing the operative pleading, issued an Order of Service on January 14, 2021 which, *inter alia*: (1) dismissed all claims pressed against Clarkstown Police Officer Papenmeyer ("Papenmeyer") and an unidentified Clarkstown Police Sergeant ("John Doe") in their official capacities; (2) dismissed the Clarkstown Police Department ("CPD") in its entirety; and (3) added the Town of Clarkstown ("Town") as a party. (Doc. 9).[2] The Court directed further, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (1976), that counsel for the Town identify John Doe within sixty days thereof. (*Id*. at 5). Plaintiff, within thirty days of receiving John Doe's identity, was to file an amended complaint substituting the name provided for John Doe. (*Id*.).

---

[1] The case was assigned to this Court on January 4, 2021. (Jan. 4, 2021 Entry).

[2] The Court issued a separate Order on January 14, 2021 which severed claims concerning Plaintiff's incarceration in New York City and directed the Clerk of Court to open a separate civil action for those claims. (Doc. 11). Judge Stanton dismissed that case without prejudice *sua sponte* for failure to state a claim upon which relief may be granted on March 4, 2021. *Griffith v. AMKC Rikers Is.*, No. 21-CV-00386, 2021 WL 848103 (S.D.N.Y. Mar. 4, 2021). Judge Stanton granted Plaintiff leave to file an amended complaint within sixty days thereof. (*Id*. at *6). Judge Stanton dismissed that action with prejudice on June 7, 2021 because Plaintiff failed to file an amended pleading. *See Griffith v. AMKC Rikers Is.*, No. 21-CV-00386.

Counsel for the Town identified Clarkstown Police Sergeant Christian Cortelli ("Cortelli") as John Doe in a letter mailed to Plaintiff on April 6, 2021. (Doc. 16). On July 16, 2021, Papenmeyer and the Town filed a letter observing that Plaintiff had not filed an amended pleading and asking that the Court set "a new deadline for Plaintiff's Amended Complaint and a briefing schedule . . . to file a motion to dismiss for failure to prosecute should Plaintiff not comply . . . ." (Doc. 19 at 2). The Court granted that application in part and extended the time for Plaintiff to file an amended complaint to August 20, 2021. (Doc. 20).

On August 11, 2021—just over a week before the extended deadline to file an amended complaint—the Court received a letter from Plaintiff requesting leave to file an amended pleading and for the appointment of *pro bono* counsel. (Doc. 21). The next day, August 12, 2021, the Court denied the request for *pro bono* counsel and extended the deadline to file an amended complaint to September 3, 2021. (Doc. 22). Approximately one month later, on September 8, 2021, the Court received a letter in which Plaintiff stated, *inter alia*, "Now you have given me a deadline to amend I have no idea[] what that means are [sic] requires." (Doc. 23 at 1). On September 29, 2021, with no further activity on the docket, Papenmeyer and the Town filed a letter seeking a pre-motion conference in advance of a motion to dismiss. (Doc. 26). On October 15, 2021, the Court issued an Order deeming the Complaint amended to substitute Cortelli for John Doe and directed counsel for the Town to advise whether they would accept service on Cortelli's behalf. (Doc. 27). Counsel advised in a letter filed on October 19, 2021 that they would accept service on Cortelli's behalf and that Cortelli joined in the pending request for a pre-motion conference. (Doc. 28). The Court endorsed that letter the following day, October 20, 2021, and deemed Cortelli served. (Doc. 29). Approximately two weeks later, on November 1, 2021, the Court waived its pre-motion conference requirement and set a briefing schedule for the contemplated motion to dismiss. (Doc. 32).

Papenmeyer, Cortelli, and the Town (collectively, "Defendants") served and filed their motion to dismiss on December 3, 2021. (Doc. 34; Doc. 35; Doc. 36; Doc. 37).[3] Plaintiff mailed his opposition papers on December 30, 2021 (Doc. 38, "Opp. Br."), and the motion was briefed fully with the filing of Defendants' reply memorandum of law in further support of the motion on January 20, 2022 (Doc. 39).[4]

For the reasons set forth below, Defendants' motion is GRANTED.

---

[3] Defendants submitted copies of five extraneous documents for the Court's consideration on the extant motion: (1) a transcript from a May 22, 2018 parole hearing (Doc. 35-2, "Ex. B"); (2) a transcript from a May 29, 2018 parole hearing (Doc. 35-3, "Ex. C"); (3) a transcript from a June 7, 2018 parole hearing (Doc. 35-4, "Ex. D"); (4) a CPD Case Report (Case No. 2018-00011245) completed by Papenmeyer and dated May 9, 2018 (Doc. 35-5, "Ex. E"); and (5) a parole warrant dated May 9, 2018 (Doc. 35-6, "Ex. F"). On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) ("Where an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks omitted)). Each of the five documents are considered properly at this juncture. *See Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *3 n.6 (S.D.N.Y. Dec. 18, 2020) (considering CPD case report on motion for judgment on the pleadings); *Uviles v. City of New York*, No. 19-CV-03911, 2020 WL 1916865, at *3 (E.D.N.Y. Apr. 20, 2020) ("Because this [parole] warrant is integral to plaintiff's complaint, the Court considers it as part of the pleadings."), *reconsideration granted on other grounds by* 2020 WL 8642289 (E.D.N.Y. June 30, 2020); *Fox v. City of New York*, No. 18-CV-09661, 2019 WL 3003993, at *4 (S.D.N.Y. July 10, 2019) (concluding that the extraneous arrest report was integral to the pleading because it provided "crucial details" concerning the plaintiff's false arrest claims (internal quotation marks omitted)); *McClinton v. Henderson*, No. 13-CV-03335, 2014 WL 2048389, at *1-2 (E.D.N.Y. May 19, 2014) (Bianco, J.) (considering parole revocation hearing transcripts on a motion to dismiss); *Awelewa v. New York City*, No. 11-CV-00778, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) ("Judicial notice may be taken of public records, including arrest reports, criminal complaints, indictments, and criminal disposition data." (internal quotation marks omitted)).

[4] The Court interprets Plaintiff's opposition to seek leave to file an Amended Complaint. (*See* Opp. Br. at 2 ("I demand the courts [sic] to grant my modifications and that properly amended my argument to the best of my ability.")). Although such a conclusory request is not usually sufficient, *see Reed v. Hales*, No. 05-CV-06497, 2006 WL 3207661, at *1 (W.D.N.Y. Nov. 3, 2006), the Plaintiff is granted leave to file an Amended Complaint in light of his *pro se* status. (*See* discussion *infra*).

## BACKGROUND

Papenmeyer responded to a medical emergency call from a Mobil gas station in West Nyack, New York, at approximately 5:20 a.m. on May 9, 2018. (Ex. E at 2-3). Papenmeyer, upon arriving at the gas station, found Heather Fortune ("Fortune") lying on the ground unresponsive next to a 2014 Mitsubishi (the "Mitsubishi") bearing New Hampshire license plates. (*Id.*).

Plaintiff informed Papenmeyer that he and Fortune were sleeping in the Mitsubishi, and, at some point, he woke to find Fortune unresponsive. (*Id.* at 3). Plaintiff reported that he performed CPR on Fortune until law enforcement arrived. (*Id.*). Fortune was transported to Nyack Hospital and pronounced dead shortly thereafter. (*Id.*).

Papenmeyer observed a hypodermic needle inside the Mitsubishi and, when the vehicle's license plate was run through CPD's system, it was revealed that the Mitsubishi had been reported stolen in Rutland, Vermont. (*Id.*).[5] Rutland police asked CPD to hold the Mitsubishi and advised that they "had frequent contact with . . . Fortune for drug[-]related issues and it was believed that she was in possession of the vehicle prior to this incident." (*Id.*).

When CPD ran Plaintiff's information through their system, they discovered that he was on parole in connection with a burglary sentence. (*Id.*).[6] Plaintiff was detained on the scene and transported to CPD headquarters. (*Id.*). Papenmeyer contacted Senior New York State Parole

---

[5] Plaintiff claims that Fortune "had taken a relatives [sic] car without permission." (Compl. at 6).

[6] The parole warrant provides the Department Identification Number ("DIN") associated with Plaintiff on May 9, 2018. (Ex. F). Searching that DIN (13-A-4655) on the New York State Department of Corrections and Community Supervision ("DOCCS") website reveals that Plaintiff was convicted of Burglary in the Third Degree in New York County in October 2013. *See Simmonds v. Family Dollar Store*, No. 18-CV-01241, 2018 WL 5447046, at *1 n.1 (E.D.N.Y. Oct. 25, 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information."); *see also Jackson v. Sullivan Cty.*, No. 16-CV-03673, 2018 WL 1582506, at *5 n.8 (S.D.N.Y. Mar. 27, 2018) ("Courts in this district have taken judicial notice of information obtained from online inmate tracking services." (internal quotation marks omitted)); *Rosario v. New York City*, No. 12-CV-04795, 2013 WL 2099254, at *1 n.1 (S.D.N.Y. May 15, 2013). A search on the DOCCS website of Plaintiff's current DIN (18-B-2559) indicates that Plaintiff was convicted of Promoting Prison Contraband in the First Degree in August 2018.

Officer Ronnita Cambell ("Cambell") who advised that Defendant "was not allowed outside of [New York City] and was out past[] his curfew." (*Id.*). Cambell issued a warrant requesting that Defendant be detained at the Rockland County Jail for violating the terms of his parole. (*Id.*; *see also* Ex. F). CPD received the warrant, declined to press charges in connection with the May 9, 2018 events, and transferred Plaintiff to the Rockland County Jail. (Ex. E at 3). Plaintiff alleges that somebody, at some point, "subjected [him] to [an] illegal strip frisk." (Compl. at 6). Plaintiff insists also that he notified Cortelli, while at CPD headquarters, that he had a history of mental illness, and that the arrest was "illegal." (*Id.* at 9). Cortelli reportedly laughed and responded, "[S]hut the fuck up[,] you n------!" (*Id.*).

Approximately one month later, on June 7, 2018, Defendant pled guilty to violating the terms of his parole by leaving New York City. (Ex. D; *see also* Ex. B; Ex. C).

This litigation followed.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[*p*]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

6

do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff seeks relief under 42 U.S.C. § 1983. (Compl. at 3). That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language . . . creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). Reading the pleading broadly, Plaintiff presses: (1) a claim for false arrest; (2) a claim for an unlawful strip search; and (3) a *Monell* claim.

I.  Lack of Personal Involvement

Before turning to the claims' substance, the Court considers, *sua sponte*, the question of personal involvement. As a prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883,

886 (2d Cir. 1987) (internal quotation marks omitted). Liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). The Complaint falls short of this requirement in two respects.

First, although Cortelli is named as a party, there are no facts implicating him in either the arrest or the ensuing search aside from the conclusory claim that he was "involved" at some point. (Compl. at 6). Such an unadorned allegation is insufficient to plead Cortelli's personal involvement in any purported constitutional violation. *See, e.g.*, *Marcus v. Annucci*, No. 20-CV-06234, 2022 WL 280935, at *4-5 (S.D.N.Y. Jan. 31, 2022); *Ford v. Aramark*, No. 18-CV-02696, 2020 WL 377882, at *13-15 (S.D.N.Y. Jan. 23, 2020); *Ortiz v. Bloomberg*, No. 10-CV-09434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011).[7]

Second, with respect to Plaintiff's strip search claim, even if the Court assumed that Plaintiff was an arrestee at the time of the search—and was, therefore, protected by the requirement that the search be conducted upon reasonable suspicion—Plaintiff does not identify who performed the search. (*See generally* Compl.).[8] Plaintiff cannot proceed on a claim under 42 U.S.C. § 1983 without identifying who deprived him of the associated right. *See Yorro v. NYS*

---

[7] Plaintiff pled also that, after complaining about the arrest and his "mental history," Cortelli said to him, "[S]hut the fuck up[,] you n------!" (Compl. at 9). To the extent Plaintiff intends to press a claim against Cortelli for using a racial slur, name-calling on its own is not a constitutional violation. *Brown v. Griffin*, No. 19-CV-02296, 2022 WL 767086, at *7 (S.D.N.Y. Mar. 14, 2022).

[8] It is unclear when the strip search occurred—and that impacts the analysis. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 324, 329 (2012) (holding that strip search of detainee, without suspicion, prior to general population placement, did not violate the Fourth Amendment); *Wheeler v. Artola*, 852 F. App'x 589, 592 (2d Cir. 2021) (explaining that the search of an arrestee must be "supported by a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence [or weapons] inside a body cavity." (quoting *Sloley v. VanBramer*, 945 F.3d 30, 38 (2d Cir. 2019)); *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (explaining that the "Fourth Amendment requires an individualized reasonable suspicion that . . . [the] arrestee is concealing weapons or other contraband"). *Arroyo v. Does #1-#4*, No. 21-CV-10823, 2022 WL 161478, at *5 (S.D.N.Y. Jan. 18, 2022) (noting the corrections officials can search detainees without suspicion of any kind).

*DOC*, No. 17-CV-09405, 2018 WL 9963874, at *5 (S.D.N.Y. Jan. 3, 2018); *Groves v. New York*, No. 09-CV-00412, 2010 WL 1257858, at *8 (N.D.N.Y. Mar. 1, 2010), *adopted by* 2010 WL 1257942 (N.D.N.Y. Mar. 26, 2010); *see also Nedd v. Queens Hosp. Ctr.*, No. 08-CV-01141, 2008 WL 2497428, at *2 (E.D.N.Y. June 18, 2008) (dismissing action where, *inter alia*, the plaintiff did "not name any individual persons who had perpetrated the alleged abuse").

Consequently, any claim against Cortelli *and* the claim for unlawful strip search are dismissed without prejudice for lack of personal involvement under 28 U.S.C. § 1915(e)(2)(B)(ii).

II.   False Arrest Claim

"A false arrest claim under Section 1983 'incorporates the elements of the state law where the arrest took place'—here, New York." *Johnson v. City of New York*, No. 18-CV-06256, 2020 WL 2732068, at *3 (S.D.N.Y. May 26, 2020) (quoting *Youngblood v. City of New York*, No. 15-CV-03541, 2019 WL 6216498, at *5 (S.D.N.Y. Nov. 21, 2019)). Accordingly, to state a claim for false arrest, Plaintiff must plead "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted). Generally, "[p]robable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010)).

The false arrest claim may be subdivided into two parts: (1) detention by Papenmeyer at the gas station; and (2) detention resulting from the parole warrant. The Court considers these theories separately.

A. <u>Gas Station Arrest</u>

"Probable cause to arrest . . . exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Wierzbic v. Howard*, 836 F. App'x 31, 34-35 (2d Cir. 2020) (internal quotation marks omitted). This standard is an objective one and evaluates "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). This requires that the Court consider "the totality of the circumstances and . . . be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted). Because probable cause asks an objective question, the arresting officer's subjective belief as to its existence is immaterial. Moreover, "[t]he arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged." *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 433 (S.D.N.Y. 2014). Probable cause "to arrest the suspect of any crime" will suffice. *Coleman v. City of New York*, No. 03-CV-04921, 2009 WL 705539, at *3 (E.D.N.Y. Mar. 16, 2009); *see also Butler v. Brito*, No. 15-CV-09718, 2017 WL 2116687, at *3-5 (S.D.N.Y. May 15, 2017).

Plaintiff, when police arrived at the gas station, was giving CPR to an unconscious woman, next to a stolen vehicle that had a hypodermic needle visible inside it. (Ex. E at 3). Plaintiff admitted that he had been with Fortune inside the Mitsubishi and Rutland PD advised that Fortune was: (1) known to them because of her drug use; and (2) suspected to be in possession of the stolen Mitsubishi. (*Id.*). These facts, in their totality, certainly support a probable cause finding because

10

they would warrant a person of reasonable caution in the belief that Plaintiff committed a crime. *See Apostol v. City of New York*, No. 11-CV-03851, 2014 WL 1271201, at *4 (E.D.N.Y. Mar. 26, 2014) (concluding that probable cause to arrest existed where "officers reasonably believed that plaintiffs were sitting in a stolen vehicle"), *aff'd*, 607 F. App'x 105 (2d Cir. 2015).

Therefore, to the extent Plaintiff intends to state a false arrest claim against based on the time between being transported from the scene until the parole warrant was issued, that claim is dismissed with prejudice because officers had probable cause to effectuate an arrest on the scene.

B. Parole Warrant Arrest

The parole warrant was issued while Plaintiff was detained at CPD headquarters. (Ex. E at 3; Ex. F). CPD declined to pursue any criminal charges and, pursuant to the warrant, transferred Plaintiff to Rockland County Jail. (Ex. E at 3). To the extent Plaintiff intends to state a false arrest claim based on the detention resulting from his parole violation, "only the less demanding reasonable cause standard need be met." *Watson v. Cieslak*, No. 09-CV-02073, 2011 WL 446276, at *5 (S.D.N.Y. Jan. 5, 2011), *adopted by* 2011 WL 476612 (S.D.N.Y. Feb. 9, 2011). This lesser standard recognizes that "parolees 'are subject to restrictions not applicable to other citizens,' and 'enjoy[] only conditional liberty properly dependent on observance of special parole restrictions.'" *Lyons v. Davis*, No. 17-CV-04504, 2018 WL 4759742, at *3 (S.D.N.Y. Sept. 30, 2018) (quoting *Trisvan v. Annucci*, No. 14-CV-06016, 2016 WL 7335609, at *3 (E.D.N.Y. Dec. 16, 2016) (alteration in original)).

The analysis pertaining to the parole warrant arrest is even simpler than that regarding the gas station arrest. First, the arrest was privileged because it was effectuated pursuant to the parole warrant. *See Albergottie v. New York City*, No. 08-CV-08331, 2011 WL 519296, at *8 (S.D.N.Y. Feb. 15, 2011) (dismissing parolee's claim for false arrest where the arrest was based on a parole

warrant and the plaintiff made no allegation that the "warrant was facially invalid or non-compliant" with governing law). Second, even if the warrant did not render the arrest privileged, Plaintiff pled guilty to violating the terms of his parole. (Ex. D at 7-8; *see also* Opp. Br. at 1 (conceding parole violation by being "outside the five boroughs")). That guilty plea provides a second, independent basis to find the confinement privileged, which the Court adopts as well. *Cf. Tarrant v. City of Mount Vernon*, No. 20-CV-09004, 2021 WL 5647820, at *10 (S.D.N.Y. Dec. 1, 2021) (dismissing false arrest claim given the plaintiff's guilty plea); *Tretola v. Cty. of Nassau*, 14 F. Supp. 3d 58, 68-69 (E.D.N.Y. 2014) ("[A] guilty plea . . . is fatal to a false arrest claim. That is so because such a plea, in essence, bars the supposedly aggrieved party from alleging the absence of sufficient grounds for his or her arrest.").

This theory of false arrest is, like its companion, dismissed with prejudice.

III. *Monell* Claim

By proceeding against the Town under 42 U.S.C. § 1983, the Court understands Plaintiff to press a *Monell* claim. Such a claim requires that Plaintiff plead: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *5 (S.D.N.Y. Mar. 22, 2021) (quoting *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012)). A *Monell* claim, however, "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)).

Notwithstanding any other pleading deficiency in this case, this claim must be dismissed without prejudice because Plaintiff has not pled an underlying constitutional violation. *See,*

*e.g.*, *Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *Santucci*, 2021 WL 76337, at *8; *Ventillo*, 2020 WL 7496294, at *14.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED. The false arrest claim is dismissed with prejudice, but the strip search and *Monell* claims are dismissed without prejudice.

Plaintiff may file an Amended Complaint within thirty days from the date of this Order to address only the pleading deficiencies identified herein and for no other purpose. Failure to file an Amended Complaint within thirty days will result in dismissal of this action without further notice. Plaintiff is reminded that if he chooses to file an Amended Complaint, the Amended Complaint will completely replace, not supplement, the Complaint. Therefore, any facts or claims that Plaintiff wishes to maintain must be included in the Amended Complaint.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. 34 and to mail a copy of this Memorandum Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated:   White Plains, New York
        April 25, 2022

_____
PHILIP M. HALPERN
United States District Judge